IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BOBBY LEON WYNN, | : | |
| Plaintiff, | : | |
| v. | : | No. 5:12-cv-323 (MTT) (CHW) |
| PAT JOHNSON, *et al.*, | : | Proceedings under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |

### REPORT AND RECOMMENDATION

Now before the Court is a Motion for Summary Judgment filed by the Defendants, Patricia "Pat" Johnson and Katina J. Stokes. (Doc. 29). In accordance with the analysis below, it is **RECOMMENDED** that the Defendants' Motion for Summary Judgment be **GRANTED**.

### BACKGROUND

Plaintiff, a former pre-trial detainee at the Bibb County Law Enforcement Center ("the Jail"),[1] commenced this Section 1983 action in August 2012. In his original Complaint, Plaintiff alleged numerous, wide-ranging claims regarding the conditions at the Jail. (Doc. 1). The Court ordered Plaintiff to recast his Complaint on a new Section 1983 form, and Plaintiff complied. (Doc. 13). After reviewing Plaintiff's recast Complaint pursuant to 28 U.S.C. § 1915A, the Court permitted Plaintiff to proceed on his denial-of-medical-care claims against Defendant Johnson, a registered nurse and the Jail's director of nursing, as well as Defendant Stokes, a licensed practical nurse and Jail employee. (Doc. 29-1, p. 3). Plaintiff alleges that the Defendants "denied Plaintiff visits to an outside ophthalmologist and delayed, for months, providing Plaintiff with

---

[1] *See Wynn v. Davis*, 5:12-cv-517 (MTT) (CHW), (Doc. 34, pp. 1-2).

1

his necessary eye medication." (Doc. 18, pp. 3-5). He sues the Defendants in both their official and individual capacities for injunctive and monetary relief.

The record indicates that Plaintiff, who claims to suffer from diabetes and glaucoma, was housed at the Jail from June 20, 2012 to February 21, 2013. (Resp., Doc. 31-1, p. 1; Aff. Patricia Johnson, Doc. 29-1, p. 4). The Defendants claim that Plaintiff underwent an intake examination in June 2012 with Dr. Oscar Jerkins, who is not a party to this action. According to the Defendants, Dr. Jerkins prescribed "three (3) eye drops: Dorzolamide (Trusopt), Latanoprost (Xalatan), and Timolol (Timoptic) [which] Plaintiff . . . was allowed to have . . . in his cell for self-administration." (Mot. Summ. J., Doc. 29-6, p. 5). Plaintiff disputes this fact, however, alleging:

> I did not come to jail on 6-20-12 with eye-drops. In fact, I did not see a[] doctor for two months. When I did see the doctor, I was in so much pain[] I was forced to use Ibupro[f]ens.
>
> (Resp., Doc. 31, p. 6)
>
> At no time upon entering [the Jail] on the day of June 20, 2012, did I have in my possession medications. I had only a necklace in my possession. My medication had been stolen three days prior to my coming here. For [Defendant] Johnson to claim otherwise is a lie.
>
> (Resp., Doc. 31, p. 9)

All parties appear to agree that Plaintiff saw Dr. Jerkins, at the latest, on August 10, 2012, (*Id.*; Mot. Summ. J., Doc. 29-6, p. 5), and it is similarly undisputed that Plaintiff received eye medication from the Defendants on August 16 or 17, at the latest. (Resp., Doc. 31, pp. 8-9; Mot. Summ. J., Doc. 29-6, p. 6). Thus, the only dispute regarding Plaintiff's eye medication is whether Plaintiff was provided with such medication during the period between June 20 and August 16 or 17.

There is similar agreement among the parties concerning the fact that Plaintiff visited an off-site specialist, upon Dr. Jerkins' referral, on December 10, 2012. (Resp., Doc. 31-1, p. 2; Mot. Summ. J., Doc. 29-6, p. 7). The parties disagree, though, concerning the substance of that visit. Plaintiff claims that the "Ophtha[l]mologist . . . when [he] saw me on 12-10-12 . . . told me I had considerable damage to my right eye." (Resp., Doc. 31-1, p. 2). The Defendants, by contrast, claim that the off-site specialist:

> Stated that the Plaintiff had normal eye pressures with no evidence of diabetic retinopathy. Further, he stated that the current treatment plan should be continued for the Plaintiff.
>
> (Aff. Oscar Jerkins, M.D., Doc. 29-2, p. 4)

The specialist's treatment notes are not in the record, and Plaintiff argues that they would "prove the seriousness of my medical needs." (Resp., Doc. 31-1, p. 4).

The Defendants filed the instant Motion for Summary Judgment in November 2013. (Doc. 29). In their Motion, the Defendants argue that: (1) there is no evidence, other than Plaintiff's own "vague and unsupported assertions," that Plaintiff suffered from an objectively serious medical need; and that (2) there is no evidence that the Defendants were "deliberately indifferent" to Plaintiff's medical needs. Because the record clearly supports the Defendants' deliberate-indifference argument, it is recommended that their motion be granted on that ground.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden then shifts to the nonmoving party to present specific evidence showing a genuine dispute of material fact, or alternatively, to show that the moving party is not entitled to judgment as a matter of law. *Id*. at 324-326. If the nonmovant's evidence is "not significantly probative," or is "merely colorable," then summary judgment may be granted for the movant. *Anderson*, 477 U.S. at 249. Indeed, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## **ANALYSIS**

Because Plaintiff has failed to present evidence creating a genuine dispute regarding whether the Defendants were "deliberately indifferent" to his serious medical needs, it is recommended that the Defendants' Motion for Summary Judgment be granted.

In order to succeed on a deliberate indifference claim, a pre-trial detainee must satisfy the "two-pronged" standard established by *Estelle v. Gamble*, 429 U.S. 97 (1976). *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994). The first prong is objective: the detainee must show an objectively "serious" medical need. *See Goebert v. Lee Cnty*., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is sufficiently "serious" when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* The second prong is

subjective: the detainee must show that the defendants acted with "deliberate indifference" to the alleged serious medical need. *Id.* This subjective component requires the detainee to prove that (a) the defendants had subjective knowledge of a risk of serious harm; but that they (b) disregarded that risk; by (c) "conduct that is more than gross negligence." *Id.* at 1326-27.

Although the Defendants seek summary judgment regarding both *Estelle*'s objective and subjective prongs, the record most readily supports their subjective-prong or "deliberate indifference" argument. The record indicates that Plaintiff met with Dr. Oscar Jerkins on "6/21/12," the day after Plaintiff entered the Jail, and that Dr. Jerkins prescribed Trusopt, Xalatan, and Timolol. (Ex. C, Doc. 29-3, pp. 19-20). Plaintiff now claims that these medications were stolen from him, (Resp., Doc. 31, p. 9), but he does not allege knowledge or participation on the part of either of the Defendants. Additionally, in the only relevant grievance Plaintiff submitted from the period between June 20 and August 16 or 17, Plaintiff asked for a "Refill" of his "eye-drop Xylatan," and did not mention a theft. (Resp., Doc. 31-1, p. 15). Regarding Plaintiff's requests to see an outside specialist, the Defendants have submitted two affidavits indicating that they lack the authority to make such referrals, (Aff. Pat Johnson, Doc. 29-1, p. 5; Aff. Oscar Jerkins, M.D., Doc. 29-2, p. 5), and Plaintiff neither contested this point in his Response nor indicated how the Defendants were otherwise responsible for failing to refer Plaintiff to an ophthalmologist before December 2012. In summary, there is no indication in the record that the named Defendants disregarded a risk of harm to Plaintiff, much less that they did so by "conduct that is more than gross negligence."

## CONCLUSION

After careful review of the record, is hereby **RECOMMENDED** that the Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may

serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 4th day of August, 2014.

s/ Charles H. Weigle_____  
Charles H. Weigle  
United States Magistrate Judge